215 Kan. 911 (1974)
529 P.2d 666
In the Matter of THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellee,
v.
KANSAS COMMISSION ON CIVIL RIGHTS AND ANTHONY D. LOPEZ, Executive Director Kansas Commission on Civil Rights, and MICHAEL BAILEY, Compliance Specialist, Kansas Commission on Civil Rights, Appellants.
No. 47,526
Supreme Court of Kansas.
Opinion filed December 7, 1974.
Roger W. Lovett, of Kansas Commission on Civil Rights, argued the cause, and Vern Miller, Attorney General, and Charles S. Scott, of Topeka, were with him on the brief for the appellants.
Roth A. Gatewood, of Topeka, argued the cause, and Charles O. Thomas, of Kansas City, was with him on the brief for the appellee.
The opinion of the court was delivered by
PRAGER, J.:
This is an action to enjoin the Kansas Commission on Civil Rights, its executive director and its compliance specialist from proceeding with an investigation or enforcing a subpoena duces tecum issued in conjunction with that investigation. The plaintiff-appellee is the Atchison, Topeka and Santa Fe Railway Company, which will be referred to in this opinion as the Santa Fe. The defendant-appellant, Kansas Commission on Civil Rights will be referred to as the Commission or the KCCR. The other defendants are Anthony D. Lopez, Executive Director, and Michael Bailey, Compliance Specialist of the Kansas Commission on Civil Rights.
There is no factual dispute in this case. The judgment of the district court was based solely upon the pleadings and other documents in the district court's file. Some time prior to May 11, 1973, a number of Santa Fe employees primarily in the laborer classification, submitted an informal "petition" to the Commission complaining about certain alleged acts of discrimination on the part of the Santa Fe. This document is not a part of the record in the case since the Commission has refused to disclose it to the Santa Fe. On May 11, 1973, the Commission at a regular meeting voted unanimously to institute an investigation of certain claimed discriminatory practices allegedly being employed by the Santa Fe at its Diesel Shops in Kansas City, Kansas. On November 6, 1973, a written notice of investigation was served by the Commission upon Santa Fe's agent in Kansas City and the investigation was commenced by the Commission. On December 5, 1973, during the course of the investigation and after a request by Santa Fe for more *913 specific information an Amended Notice of Investigation was issued and served on Santa Fe which provided as follows:
"Amended Notice of Investigation
"To: Santa Fe Railroad  Diesel Shops 22nd Street and Argentine Blvd. Kansas City, Kansas
"NOTICE OF INVESTIGATION
"Notice is hereby given, pursuant to K.S.A. 44-1005, that the Kansas Commission on Civil Rights will conduct an investigation concerning alleged discrimination against members of the laborer classification in the following particulars to-wit:
"1. Unfairly increasing work load without an appropriate increase in staff.
"2. Decreasing the number of supervisors particularly on the 4:00 p.m. to 12:00 a.m. and 12:00 a.m. to 8:00 a.m. shifts, resulting in decreased productivity on those shifts, and an accompanying increase in work assigned to the 8:00 a.m. to 4:00 p.m. shift.
"3. Decreasing labor personnel in certain work areas resulting in a great increase in work load for the remaining people in those areas.
"4. Refusal to fill job vacancies in an expedient manner, resulting in increased work load for all laborers.
"5. Refusal of seniority rights to job assignment.
"6. Violation of contract in the reassignment of duties from job classification to another without a proportional increase in staff.
"7. Issuing disciplinary actions inconsistent with the offense, and inconsistent with actions taken for similar offenses in other work classifications.
"8. Following a general pattern of treating members of the laborer classification, which is primarily composed of minority group members, differently than members of the other trade classifications, which are primarily composed of Caucasians. All of which have a net discriminatory effect, because of race, ancestry and national origin.
"The investigation will consist of examination of any and all records pertinent to the aforementioned matters. Interviews will be conducted of individuals relative to the aforementioned matters."
Throughout this litigation the Santa Fe has consistently maintained that the Amended Notice of Investigation was insufficient to advise Santa Fe as to the "nature and scope" of the investigation prior to its commencement as required by K.S.A. 44-1005. That statute provides in substance that whenever the Commission has in its own judgment reason to believe that any person has engaged in a pattern or practice of discrimination, the Commission may conduct an investigation without filing a complaint. It is required, however, that "the person to be investigated shall be advised of the nature and scope of such investigation prior to its commencement." The Commission took the position that the Amended Notice of Investigation set out above was a sufficient compliance with the *914 statute and refused to furnish additional information prior to the completion of the investigation. On December 12, 1973, an informal conference was held between the defendant Michael Bailey, as compliance specialist, and several Santa Fe officials. At this conference the Santa Fe continued to seek further information and clarification as to the nature and scope of the investigation, which the Commission refused to provide. On December 26, 1973, a subpoena duces tecum was issued by the Commission requiring the Santa Fe to produce the personnel files of all its present employees of the Argentine Diesel Shops, except clerical personnel, and of all persons employed there since 1970. At this point the present court litigation began.
The Santa Fe refused to comply with the subpoena duces tecum which required making its personnel files available. It filed an action in the district court of Wyandotte county for a temporary and permanent injunction restraining the KCCR and its agents from enforcing the subpoena duces tecum or proceeding with any further investigation unless and until "the plaintiff is fully apprised of the nature and scope of such investigation as required by law and such an investigation is confined to matters of such jurisdiction of the K.C.C.R." The trial court immediately set the case for hearing on January 4, 1974, on the application of Santa Fe for a temporary injunction. At this hearing all of the parties appeared by counsel. Since there was no factual dispute the hearing consisted primarily of the arguments of counsel. At the conclusion of the hearing and by order date January 28, 1974, the district court ordered the Commission to permit the Santa Fe to examine its files concerning the matters in dispute and to make copies of the same at Santa Fe's expense. The district court further ordered that the defendant Commission, within 10 days, furnish to the court and to Santa Fe a second amended notice of investigation in the form of a bill of particulars, setting forth with reasonable and sufficient certainty the subject matter of the defendant's investigation, specifying the nature and scope of such investigation and such information as the defendant Commission may have, indicating what prompted the investigation. The district court also by a restraining order enjoined the Commission from enforcing the subpoena duces tecum previously served and set the matter down for further hearing on February 11, 1974. Subsequently the Commission and the two individual defendants advised Santa Fe that they would not comply with the court's order and would not file a second amended notice *915 of investigation in the form of a bill of particulars nor allow the Santa Fe to inspect or copy the Commission's records pertaining to the investigation. On February 11, 1974, a hearing was held on the matter of a permanent injunction which was taken under advisement by the court. On February 19, 1974, the district court entered judgment permanently enjoining the Commission and its executive director and compliance specialist from proceeding further with the investigation or enforcing the subpoena duces tecum previously issued as a part thereof. As a part of its judgment the district court made the following findings of fact and conclusions of law:
"FINDINGS OF FACT AND CONCLUSIONS OF LAW
"Although most of the pertinent facts in this matter are not in dispute, the Court cannot without regret cite the defendants' noncompliance with the amended restraining order of January 28, 1974, and the fact that in the future more serious action in the nature of direct contempt might lie in such equitable actions for violations of the Court's order.
"The Court has before it the extensive briefs of counsel, and by agreement of counsel at the hearing on February 11, 1974, the one cogent issue remaining in this case is the sufficiency of the notice of investigation pursuant to statute.
"The Court has noted in the court file the certification by Anthony D. Lopez concerning the excerpts of the minutes of the meeting of the Commission on May 11, 1973, wherein Commissioner Shechter moved that the presentation of James C. Dorsey for a pattern investigation be accepted, and the unanimous approval of such motion. This exhibit has been made a part of the permanent court file.
"Counsel for defendants set out the procedure of the Kansas Act Against Discrimination and the fact that they are quasi-judicial in nature and are quite clearly separate from those that are investigative in nature. Counsel admits in his memorandum brief that such notice must be general in nature, and the investigation will consist of examination of any and all records pertinent to the afore-mentioned matters. In concluding on this issue the defendants say that so long as the scope of the investigation set out in the Notice of Investigation falls within the jurisdiction of the Commission, it is not the subject of further inquiry.
"Reference must be made to K.S.A. 1972, Sec. 44-1005, that the person to be investigated be advised of the nature and scope of such investigation prior to its commencement.
"It was the legislative intent of this Act in matters involving civil rights that the Commission, first of all, function as a conciliatory agency and that matters, although somewhat quasi-judicial in nature, should be expeditiously and without intensive investigation amicably settled between the parties without the necessity of long, protracted hearings and eventual litigation. There is nothing in the Kansas Civil Rights Act, K.S.A. 44-1001, et seq. that empowers the defendants to investigate discrimination against a labor organization. Labor disputes involving a railroad are governed by 49 U.S.C.A. Sec. 151, and the remedies thereunder are the exclusive forum as held in Andrews v. Louisville & Nashville Railway Company, 406 U.S. 320.

*916 "It was impossible for the plaintiff in this case, from reading the Notice of Investigation, to know what the defendant Commission had in mind in reference to treating the members of the laborer Classification differently than members of other classifications. By its refusal to either amend this notice or provide information from its files, the defendant Commission continues to deprive the plaintiff of any explanation of the elusive term of treating members differently.
"As a matter of practicality, the defendants to this date have not attempted any conciliatory meeting with the plaintiff nor have they abided by the Court's order to do so, or to expedite the quick determination of the entire intended purpose or consideration by the Commission.
"The costs of this action will be taxed to the defendants."
The Commission and its agents have filed a timely notice of appeal to this court raising pure issues of law. The issues presented here are matters of first impression since the enactment of the first Kansas Act Against Discrimination, K.S.A. 44-1001, et seq. Suffice it to say, the anti-discrimination statutes leave much to be desired in clarity and precision as to the procedures which should be followed by the Kansas Commission on Civil Rights. Because of the novelty of the questions and the difficulty in finding clear-cut answers thereto in either statutory or decisional law, we sympathize both with the district court and counsel in their endeavors to determine this litigation.
There are basically three points involved on this appeal. They are as follows:
(1) The primary issue presented is the sufficiency of the Amended Notice of Investigation, which the Commission served on the Santa Fe, to satisfy the requirement of K.S.A. 44-1005 that the person to be investigated shall be advised of the "nature and scope" of such investigation prior to its commencement.
(2) The second issue is whether or not the person investigated by the KCCR has the right to inspect the Commission's files during the course of the investigation.
(3) The third issue is whether the matters set forth in the Amended Notice of Investigation are beyond the area of investigation authorized to the Kansas Commission on Civil Rights by reason of the fact that the subject matter of the proposed investigation involves a railway labor dispute which falls exclusively within the jurisdiction of the Railway Labor Act. (45 U.S.C.A. § 151, et seq.)
At the outset before determining the specific questions presented it might be helpful to discuss the varying functions of the Kansas Commission on Civil Rights so that its investigatory powers can be distinguished from its adjudicatory powers. The first act was originally passed in 1953 and it has been amended and expanded on a number of occasions since that time. K.S.A. 44-1001 declares in *917 substance that it is public policy of the state of Kansas to eliminate and prevent discrimination in all employment relations, in places of public accommodations, and in housing. It is not only race discrimination which the act seeks to avoid; it also seeks to eliminate discrimination based upon religion, sex, physical handicap (1974), national origin and ancestry. K.S.A. 44-1004 sets forth the functions, powers and duties of the Commission. It is given broad powers to adopt suitable rules and regulations to carry out the provisions of the statute. It has the power to subpoena witnesses, compel their appearance, require the production for examination of records and other documents including evidence and possible sources of evidence. The Commission may administer oaths and take depositions subject to the same limitations as would apply if the depositions was taken in the aid of a civil action in court. It may negotiate conciliation agreements, conduct hearings, and may make final orders granting relief to correct patterns of discrimination and to prevent their reoccurrence. K.S.A. 44-1004 (9), (10), (11), and (12) authorize the Commission to carry out an educational program, to study the problems of discrimination and to encourage community effort to eliminate discrimination and foster good will among all elements of the population of the state. K.S.A. 44-1005 provides for the filing of verified complaints by or for aggrieved persons or the commission on its own initiative or the attorney general may file a complaint alleging discrimination. In the same statute the KCCR is granted broad powers of investigation even though a formal complaint is not filed. K.S.A. 44-1005 reads in part as follows:
"Whenever any problem of discrimination because of race, religion, color, sex, national origin or ancestry arises, or whenever the commission has, in its own judgment reason to believe that any person as herein defined has engaged in an unlawful employment practice or an unlawful discriminatory practice in violation of this act, or has engaged in a pattern or practice of discrimination, the commission may conduct an investigation without filing a complaint and shall have the same powers during such investigation as provided for the investigation of complaints: Provided, That the person to be investigated shall be advised of the nature and scope of such investigation prior to its commencement. The purpose of the investigation shall be to resolve any such problems promptly. In the event such problems cannot be resolved within a reasonable time, the commission may issue a complaint whenever the investigation has revealed a violation of the Kansas act against discrimination has occurred. The information gathered in the course of the first investigation may be used in processing the complaint."
*918 44-1005 further provides that if after such investigation it appears that probable cause exists for crediting the allegations of the complaint, a KCCR commissioner may endeavor to eliminate the unlawful discriminatory practice by informal conference and conciliation. If this fails, a formal complaint must be issued and the matter is set down for hearing. At this point the investigative function of the commission ends and its adjudicatory function begins.
It is important to distinguish between an "investigation" and a "hearing" or "adjudication". The term "hearing" is appropriate to quasi-judicial proceedings while "investigation" is appropriately used with regard to nonjudicial functions of an administrative agency and the seeking of information for future use rather than proceedings in which action is taken against someone. (State Ex Rel. Railroad & Warehouse Commission v. Mees, 235 Minn. 42, 49 N.W.2d 386, 27 A.L.R.2d 1197; Bowles v. Baer [7th Cir. Ill.], 142 F.2d 787.) An "investigation" is nonadversary and contemplates a procedure much less formal and more flexible than applies even to an administrative hearing. In Railway Clerks v. Employees Assn., 380 U.S. 650, 14 L.Ed.2d 133, 85 S.Ct. 1192, the Supreme Court of the United States stated that an administrative investigation is essentially informal, not adversary, and is not required to take any particular form. In Hannah v. Larche, 363 U.S. 420, 4 L.Ed.2d 1307, 80 S.Ct. 1502, the Supreme Court points out that where an administrative agency makes a determination of a quasi-judicial nature, the parties to the adjudication must be accorded the traditional safeguards of a trial; but when such an agency is conducting nonadjudicative, fact-finding investigations, rights such as apprisal, confrontation, and cross-examination generally do not obtain.
The distinction between a quasi-judicial proceeding and an investigation is discussed by this court in State, ex rel., v. American Oil Co., 202 Kan. 185, 188, 446 P.2d 754 where we stated:
"The inquisition procedure here involved is an historically well-known legislative device enabling the state's chief law enforcement officer to gather information necessary for effective enforcement of our antitrust laws. The proceeding is not adversary but is ex parte; it is investigative and not adjudicatory. Of course, facts uncovered through it may lead to an adjudicatory hearing, civil or criminal, the same as information disclosed by any other method of investigation. That which the corporate appellants are really asserting is the right to be present during the attorney general's investigation. The right to an adjudicatory hearing includes the right to counsel. But we know of no constitutional right in anyone to be present at an investigation simply because his *919 conduct is the subject of the inquiry and he may in the future be prosecuted as a result of information developed during the investigation...."
The Commission's first point on this appeal is that the trial court erred in ordering the Commission to open its file to permit examination of its contents by the Santa Fe. In making this order it is obvious that the court's intent was that such a disclosure could provide the Santa Fe with additional information as to the nature of the investigation. It is our judgment that the trial court was in error in ordering the commission to disclose all of the contents of its files at this point during the investigation stage of the proceedings. The Santa Fe argues that the investigation file of the Commission is a public record which must be disclosed under the provisions of K.S.A. 45-201 which provides as follows:
"Official public records open to inspection; exceptions. All official public records of the state, counties, municipalities, townships, school districts, commissions, agencies and legislative bodies, which records by law are required to be kept and maintained, except those of the juvenile court which shall be open unless specifically closed by the judge or by law, adoption records, records of birth of illegitimate children, and records specifically closed by law or by directive authorized by law, shall at all times be open for a personal inspection by any citizen, and those in charge of such records shall not refuse this privilege to any citizen."
We hold this statute is inapplicable to the investigation files of an administrative agency such as the Kansas Commission on Civil Rights. 45-201 applies only to public records which are required by law to be kept and maintained. In regard to the Kansas Commission on Civil Rights the statute would, of course, apply to the official minutes of its meetings and to matters contained it its official dockets such as pleadings, motions, official transcripts of a hearing and the orders and official actions of the Commission. The Commission by K.A.R. 21-40-10 has ordered that a docket of all proceedings before the Commission shall be available for inspection and copying by the public during the office hours of the agency. Once a proceeding has reached the adjudicatory stage then the formal records of the agency must, of course, be disclosed to any interested person. In our judgment, however, it was not the intention of the legislature to require the Commission to open its files to public scrutiny at the investigation or conciliation stage. We note that 44-1005 provides that after the investigation has been completed, the designated commissioner shall endeavor to eliminate an unlawful discriminatory practice by conference *920 and conciliation and that the Commission and the members of its staff, shall not disclose what has transpired in the course of such endeavors. We conclude that the Commission is not required by 45-201 as a matter of law to open its investigation files for public inspection.
In further support of its position Santa Fe argues that the Kansas Commission on Civil Rights is an administrative agency performing quasi-judicial functions and since the Commission must make quasi-judicial decisions on the basis of facts obtained in its investigation, the person investigated is entitled to a full disclosure by the Commission so that it may marshall its evidence and prepare its defense. In our judgment the Santa Fe's argument is not valid in so far as it applies to the investigation stage where the function of the Commission is to gather evidence to determine whether or not there is probable cause for a quasi-judicial hearing. At this point a full disclosure is premature since the Commission may decide that a formal adjudication of a complaint is not warranted by the evidence. The situation is different, of course, where a formal complaint has been filed and the matter is proceeding to hearing. In that situation both the complaint and respondent are entitled to a reasonable disclosure of matters within the knowledge of the Commission which are relevant on the issues to be determined at the hearing. For these reasons we hold that the trial court erred in requiring the commission to open its files for inspection by the Santa Fe during the investigation stage of the proceedings.
The Commission's next point on this appeal is that the trial court erred in holding that the Amended Notice of Investigation served by the Commission upon the Santa Fe was not sufficient to comply with the requirements of K.S.A. 44-1005. As pointed out heretofore 44-1005 authorizes the Commission to conduct an investigation without the filing of a formal complaint where it has reason to believe that a person has engaged in a pattern or practice of discrimination. The only statutory requirement is that the person to be investigated shall be advised of the nature and scope of such investigation prior to its commencement. The statute does not define with precision what is meant by the terms "nature and scope of such investigation". The statute does not specifically require a written notice but only that the person to be investigated shall be advised of the nature and scope of the investigation. The Santa Fe takes the position that the notice of investigation served upon *921 it in this case does not effectively advise it of the nature and scope of the investigation to be conducted. It argues that the notice is indefinite and vague and that a full disclosure by the Commission is contemplated and required by 44-1005. Santa Fe further maintains that prior to the commencement of the investigation it was entitled to be advised of the specific problem involved so it could meet the issue and prepare its defense since the Kansas Commission on Civil Rights is a quasi-judicial body exercising quasi-judicial functions. Santa Fe further contends that the act contemplates conciliation of discrimination disputes if at all possible, and that conciliation is not reasonably possible if one of the parties to be conciliated is kept ignorant of the facts which brought about the investigation. The Commission in its brief maintains that a statement of the nature and scope of the investigation must of necessity be in broad general terms until the facts have been more specifically developed. When the facts are finally determined then if a formal complaint is filed, at that point in time the respondent is entitled to such specificity in the complaint as to enable the respondent to have full knowledge of the charges against it so as to prepare its defense. The thrust of the Commission's argument is that specificity in the charges is not required until the adjudicatory stage is begun and then the requirements of due process come into play.
The problem is to determine the extent of notice which is reasonably required under the particular circumstances of each case. If the claim of discrimination is based necessarily upon an alleged discrimination against a specific individual, as where an individual claims to have been discharged or denied employment because of race, then the person being investigated should be entitled to know prior to the investigation who is complaining and what he is complaining about. In situations, however, where the essence of the alleged discrimination involves a pattern of discrimination against a class of persons rather than specific individuals, the names of informants need not be disclosed in the notice of investigation. Racial discrimination is by definition a class discrimination. If it exists, it applies throughout the class even though it may not always be felt equally by all members of the racial class. If the Commission is to carry out effectively the legislative policy of eliminating patterns of discrimination in employment in this state, the Commission must be allowed a certain amount of confidentiality as to the names of employees who have brought to the attention *922 of the Commission the existence of discriminatory policies and patterns of discrimination. The experience of the federal Equal Employment Opportunity Commission has been that complaints filed by a single commissioner are frequently used because employees who have informed the Commission of the existence of discriminatory policies are unwilling to file charges themselves for fear of retaliation. (Graniteville Co. [Sibley Div.] v. Equal Employ. Op. Com'n, [4th Cir.] 438 F.2d 32.)
We have concluded that in those cases where the charge of discrimination in employment involves a specific individual who is complaining about a specific act of discrimination against him, then the person being investigated is entitled to be advised of the name of that person and the claimed basis of discrimination which he has raised. In cases, however, where there is claim of discrimination in employment against an entire class of persons, the Commission must be allowed discretion at the investigation stage in deciding whether or not the names of the informers should be revealed to the person being investigated. In a case of claimed discrimination against a class of persons, the specific names of the informants are not as crucial as in cases where the discrimination is based upon a single act or a series of acts involving a single individual.
There remains the question as to how this information should be provided. As pointed out above the statute 44-1005 simply states that the person to be investigated shall be advised of the nature and scope of such investigation prior to its commencement. We believe that in order for the statute to be satisfied the person to be investigated should usually be provided a copy of the document which initially brought the claim of discrimination to the attention of the Commission. Where, however, the claim of discrimination involves discrimination against a class rather than against specific individuals, the commission should have discretion to delete from the document the name of the person or persons complaining. This procedure in our judgment would be in accord with the legislative intent requiring a notice of the nature and scope of the investigation and would at the same time provide protection to individual employees who have informed the Commission of the existence of claimed patterns of discrimination but who are unwilling to file charges themselves for fear of retaliation.
With these principles in mind we now turn to the Amended Notice of Investigation which was served by the Commission on the *923 Santa Fe in this case. We have concluded that this notice is sufficient to advise the Santa Fe of the nature and scope of the investigation provided the Commission supplies the Santa Fe with a copy of the "petition" filed by the Santa Fe employees which prompted the investigation. As pointed out above, however, at this point the Commission in its discretion may delete from the petition the specific names of the employees who signed it. It is clear from the Amended Notice of Investigation that an informal complaint has been made that the Santa Fe has discriminated against the employees of the Santa Fe in the laborer classification and that such discrimination exists because the laborer classification is primarily composed of minority group members. The specific acts complained of involve the terms, conditions, or privileges of employment. These claimed practices fall within the definition of an unlawful employment practice under 44-1009 (2) (a). That section declares in substance that it shall be an unlawful employment practice for an employer because of race to discriminate against a person in compensation or in terms, conditions, or privileges of employment. Furthermore in section (2) of 44-1009 it is declared to be an unlawful employment practice for a labor organization to discriminate against any of its members because of race. We cannot accept the position of the Santa Fe that the Kansas Act Against Distrimination applies only to patterns of discrimination against individuals rather than against associations or organizations of individuals. In section 44-1002 the term "person" is defined to include individuals, associations, and organizations. We think it clear that racial discriminatory practices against a class of employees is a proper subject for investigation by the Kansas Commission on Civil Rights and that a class of persons discriminated against may include a labor organization consisting primarily of minority persons. For the reasons set forth above we have concluded that the Amended Notice of Investigation coupled with a copy of the document received by the Commission which prompted the investigation (with the deletions of names heretofore discussed) would be sufficient in this case to satisfy the statutory requirement that the person to be investigated shall be advised of the nature and scope of the investigation prior to its commencement.
The final point raised on this appeal is that the trial court erred in holding that there is nothing in the Kansas Act Against Discrimination that empowers the Commission to investigate discrimination against a railway labor organization for the reason that labor *924 disputes involving a railroad fall within the exclusive jurisdiction of the Railway Labor Act, 45 U.S.C.A. § 151, et seq. The Santa Fe maintains that the allegations of discriminatory acts in the first seven paragraphs in the Amended Notice of Investigation obviously involve labor disputes which fall within the exclusive jurisdiction of the National Railway Adjustment Board and that only that body has jurisdiction to take corrective administrative action. We do not believe that the issue raised can be determined during the investigation stage of this proceeding. As pointed out above under the act it is an unlawful employment practice for an employer to discriminate against persons in terms, conditions, or privileges of employment. The mere fact that a labor dispute is involved does not necessarily deprive the Kansas Commission on Civil Rights of jurisdiction to investigate and attempt to eliminate a pattern of discrimination. It is entirely possible that an employer and a labor union representing its employees could enter into a labor contract which discriminated against minority employees in such a way as to constitute a violation of the Kansas Act Against Discrimination. In Glover v. St. Louis-S.F.R. Co., 393 U.S. 324, 21 L.Ed.2d 519, 89 S.Ct. 548, the Supreme Court of the United States held that the Railway Adjustment Board has no power to order the kind of relief necessary to end alleged racial discrimination by the railroad and a union in refusing to promote certain railroad employees. The court recognized the right of group of minority employees to sue a railroad directly in the United States District Court for alleged racial discrimination against its railway employees without first seeking relief under the Railway Labor Act. The Santa Fe relies upon Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 32 L.Ed.2d 95, 92 S.Ct. 1562. Andrews is not in point because it did not involve a claim of racial discrimination.
We have concluded that the Kansas Commission on Civil Rights has the power to conduct investigations to determine if there exists racial discrimination in terms, conditions, or privileges of employment by a railway corporation. Furthermore it may seek to eliminate by informal conciliation, patterns of discrimination which an investigation discloses. Whether or not a dispute falls within the jurisdiction of the Railway Labor Act or the Kansas Act Against Discrimination or both cannot reasonably be determined until after the investigation has been completed. It might very well be that an investigation in this case would reveal patterns of discrimination resulting from the labor contract entered into by the Santa Fe and *925 the railway union. In that situation the Commission would have authority to broaden its investigation to cover discriminatory acts on the part of the labor union. Suffice it to say, it is simply too early to determine whether or not the Commission has authority to proceed in an adjudicatory proceeding against the Santa Fe under the Kansas Act Against Discrimination. The issue as to the exclusive jurisdiction of the Railway Labor Act may or may not have merit and may have to be determined at a later time when the facts are fully disclosed. In any event it was error for the district court to deny the Commission the right to proceed in its investigation on that ground.
For the reasons set forth above the judgment of the district court is affirmed only as to that portion of its order which required the Kansas Commission on Civil Rights to disclose the document which prompted the investigation by the Commission. The judgment of the district court requiring the Commission to open its investigative files for inspection, and holding that the Amended Notice of Investigation was not a sufficient compliance with 44-1005, and granting injunctive relief for the reason that the subject matter of the investigation was outside the jurisdiction of the Kansas Commission on Civil Rights is reversed. The case is remanded to the district court with instructions to dissolve its restraining order and injunction, provided the appellants furnish to the appellee a copy of the document which prompted the investigation with the deletion of the names of individuals.
FROMME, J., dissenting.
This case covers a new and expanding area in the field of administrative law, one which will vex this court for years to come. The Kansas Commission on Civil Rights was born of a recognition of the need for fair play and equal treatment for all people. I see no compelling reason why an employer complained against should not be treated on equal terms with the Commission. The employer can be required to disclose all pertinent business records by the use of subpoenas. It seems only fair that the Commission should be required to disclose to the employer all pertinent information in its possession. If fair play and equal treatment are the guiding rules of the Commission the employer complained against should be approached with openness and an attitude of fair play in an effort to conciliate and not to litigate.
To permit the Commission to withhold a copy of the complaint or the name of the complainant for fear of employer retalation assumes *926 bad faith on the part of the employer. The provisions of the Kansas act against discrimination make any retaliation by an employer against a complaining employee a criminal offense. See K.S.A. 44-1009 (4).
I would require full disclosure by both the Commission and the employer in order to get at the heart of every complaint in an atmosphere of openness and fair play.
Now I turn to the jurisdictional sufficiency of the statutory notice of investigation.
An administrative agency, such as the KCCR is granted only such authority as the legislature has delegated to it. It has no jurisdictional authority to either investigate or act outside that area of delegated authority. The investigative authority and the quasi-judicial authority of any commission complement each other and both should be restricted to the particular area of delegated authority. The KCCR has a right in this case to have this court delineate the jurisdictional boundaries within which it must investigate and process complaints of discrimination.
The comparison made in the present opinion of this court between the fact finding investigations of the KCCR and the inquisition procedures authorized for the attorney general under K.S.A. 50-153 is ill advised. The attorney general is the chief law enforcement officer of the State of Kansas. The case of State, ex rel., v. American Oil Co., 202 Kan. 185, 446 P.2d 754, which speaks to inquisitions by the attorney general, is not proper authority for the extent and nature of an investigation by the KCCR.
Although the discrimination act does not define what is meant in the notice requirement by the phrase "nature and scope of such investigation," it is elementary that such notice must include some alleged act or practice which would amount to discrimination over which the commission has authority.
The Railway Labor Act (45 U.S.C.A., § 151, et seq.) is a federal law which in my opinion has pre-empted the field of labor disputes between members of an employee union and a carrier such as Santa Fe. The allegations in the Notice of Investigation in the present case are patently matters in the nature of a labor dispute. They are not, in my opinion, within the area of discrimination between individuals. The KCCR should not be required to investigate such disputes. Although the eighth paragraph of the notice concludes with, and I quote, "all of which have a net discriminatory effect, because of race, ancestry and national origin", such a conclusion *927 depends upon the sufficiency of the preceding paragraphs. The preceding paragraphs relate to labor disputes between a particular union and the employer. These do not pertain to violations of individual civil rights.
The notice refers to such things as unequal work loads, supervision, staffing, filling vacancies, seniority, reassignment of duties, and discipline as applied by the company to all members of a trade classification. The complaint made is that all members of that trade classification, whether Negro, Spanish-American, Caucasian, or Indian are being treated differently than the members of other trade classifications. In other words all workmen in the diesel shops in Kansas City, it is claimed, are treated differently than members of the other trade classifications, such as the International Brotherhood of Firemen, etc.
These are issues regularly presented in grievance cases under the administrative procedures in the Railway Labor Act, and are not within the authority delegated to the KCCR.
The KCCR was created for the purposes set forth in K.S.A. 44-1001, to correct "discrimination against individuals in employment relations ... by reason of race, religion, color, sex, national origin or ancestry."
It seems clear to me that the notice set forth in the majority opinion is outside that area of authority delegated to the KCCR and we should so hold. In my opinion the notice was jurisdictionally defective.
SCHROEDER and FONTRON, JJ., join in the foregoing dissenting opinion.