548 A.2d 144

**Charles F. PARLATO**

v.

**STATE of Maryland COMMISSION ON HUMAN RELATIONS.**

**No. 80, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 5, 1988.

Benjamin Lipsitz, Baltimore, for appellant.

Lee D. Hoshall (Henry B. Ford, on the brief), Baltimore, for appellee.

Argued before GARRITY, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

On February 17, 1983, Charles F. Parlato, the appellant, filed a complaint with the Maryland Commission on Human Relations (the Commission) in which he alleged that his employer, Abbott Laboratories, had discharged him because of race and age in violation of Md.Code Ann., Art. 49B, § 16(a). After receiving the complaint, the Commission pursuant to Art. 49B, § 10 instituted a preliminary investigation to determine whether appellant's claim was colorable, justifying further administrative action against Abbott Laboratories.

That investigation revealed that Parlato, a 55 year old male Caucasian, had been employed by Abbott Laboratories as a hospital sales representative from 1969 until October 4, 1982 when he was fired. In March of 1982 one of Abbott Laboratories' regional managers submitted a report indicating that Parlato's job performance was unsatisfactory. Specifically, his sales receipts were considered inadequate. Pursuant to that regional manager's request, Abbott Laboratories presented Mr. Parlato with a "performance evaluation and action plan," which he acknowledged on April 9, 1982. During the evaluation period, appellant's poor performance persisted, causing Abbott Laboratories to place him on probation. Parlato was notified that his resignation would be requested if his performance did not appreciably improve.

With this information, together with statistics on the racial and age patterns of Abbott Laboratories' hiring and firing practices, the Commission's staff on October 11, 1983 issued its finding that there was no probable cause to believe appellant was terminated due to his race or age. On November 10, 1983, appellant requested reconsideration of

the finding, which was granted on December 16, 1985.[1] The Commission conducted a further investigation to aid in its reconsideration. On August 3, 1987, however, the Commission's Deputy Director sustained the "no probable cause" finding. From this decision Parlato appealed to the Circuit Court for Baltimore City, which dismissed the case for lack of subject matter jurisdiction. Parlato's appeal of that dismissal to this Court is based on alternative grounds. He asserts:

(a) The Commission's sustaining of its no probable cause finding was appealable under the Maryland Administrative Procedure Act.

(b) [Art 49B] Sec. 10(d) could not constitutionally deprive the lower court of subject matter jurisdiction of Parlato's appeal.

## (a) Subject Matter Jurisdiction

We begin our analysis by noting that judicial review of administrative action is generally a creature of legislative will as opposed to constitutional or common law right. *Criminal Injuries Compensation Board v. Gould*, 273 Md. 486, 500, 331 A.2d 55 (1975). ("An appellate right is entirely statutory in origin and no person may prosecute an appeal unless the right is conferred by statute."); *Urbana Civic Association v. Urbana Mobile Village, Inc.*, 260 Md. 458, 461, 272 A.2d 628, (1971); *Warwick Corporation v. Department of Transportation*, 61 Md.App. 239, 244, 486 A.2d 224 (1985). The primary source from which the power and right of judicial review may arise is the enabling statute which defines the scope of the particular agency's power. The relevant statute in this case is Article 49B, § 10, which provides:

(a) After the filing of any complaint the executive director shall consider the complaint and shall refer it to

---

**1.** The delay in granting appellant's request resulted from the Commission's inability to locate appellant's letter requesting such reconsideration.

the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter referred to as the "respondent"), against whom or which the complaint is made.

(b) If the finding is that there is probable cause for believing a discriminatory act has been or is being committed within the scope of any of these subtitles, the Commission's staff immediately shall endeavor to eliminate the discrimination by conference, conciliation, and persuasion, and shall forward a written copy of the findings of any investigation of a real estate agent or broker to the real estate commission.

(c) If an agreement is reached for the elimination of the discrimination as a result of the conference, conciliation and persuasion the agreement shall be reduced to writing and signed by the respondent, and an order shall be entered by the Commission setting forth the terms of the agreement. The Commission shall not enter an order at this stage of the proceedings unless it is based upon a written agreement. If no such agreement can be reached, a finding to that effect shall be made and reduced to writing with copies furnished to the complainant and to the respondent.

(d) A denial of the request for reconsideration of a finding of no probable cause by the Commission is a final order appealable to the circuit court as provided in § 10–215 of the State Government Article of this Code *provided that the United States Equal Employment Opportunity Commission does not have jurisdiction over the subject matter of the complaint.* (emphasis supplied)

Subsection d was added to § 10 in 1982 when Senate Bill 419 was enacted as Ch. 129, Acts of 1982. The preamble to that law recites that its passage was "for the purpose of creating a right of appeal from a no probable cause finding

by the Human Relations Commission *under certain circumstances."* (Emphasis in original.) As originally introduced S.B. 419 provided that a denial of a request for reconsideration of a finding of "no probable cause" by the Commission would be appealable whatever the alleged ground of discrimination might have been. The bill was amended, however, in the Constitutional and Public Law Committee of the Senate to add the language of § 10(d) which is emphasized above. That amendment recognized that certain classes of persons who are protected from discrimination by Article 49B, *e.g.*, persons alleging discrimination based on marital status, physical or mental handicap, as well as those who alleged discrimination in housing and public accommodation, had no standing to air their complaints before the United States Equal Employment Opportunity Commission (EEOC) or to sue in the federal courts for redress of such discrimination. By enacting S.B. 419 as so amended the General Assembly clearly limited the right to appeal a "no probable cause" finding to those classes of alleged victims of discrimination. As to persons who were entitled to relief from the EEOC or the federal courts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1982) or the Age Discrimination in Employment Act, 29 U.S.C. § 626 (Reorganization Act of 1977, 5 U.S.C. § 901 *et seq.*), the General Assembly expressly denied any right of appeal from a "no probable cause" finding. Appellant's complaints of racial and age discrimination were within the jurisdiction of the EEOC, and consequently he was given no right of appeal from the Commission's finding in the instant case.

The appellant does not assail this plainly expressed legislative intent. Rather, he asserts that his right to judicial review of the Commission's no probable cause finding is authorized by the Administrative Procedure Act (APA). State Govt.Code Ann. § 10–101 *et seq.* The APA provides that any party who is aggrieved by the final decision of an administrative agency in a contested case is entitled to judicial review of that decision by a circuit court.

State Govt.Code Ann. § 10–215. Thus, the judicial review is limited to decisions of an agency in a "contested case." That term is defined in § 10–201 of the APA:

(c) "Contested case" means a proceeding before an agency to determine:

(1) a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing; ...

The Court of Appeals and this Court in reviewing this definition have held that it is applicable to proceedings conducted by the agency in a quasi-judicial capacity where its decision immediately affects or adjudicates the rights or property of specific parties. *Prince George's County v. Blumberg,* 288 Md. 275, 295–96, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *Elprin v. Howard County Board of Education,* 57 Md. App. 458, 463–67, 470 A.2d 833, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984). We hold that the investigation of appellant's complaint of discrimination which resulted in its no probable cause finding was not such a "contested case" and explain.

Article 49B, § 10(a) authorizes the executive director of the Commission to commence an investigation into the existence of discriminatory practices upon receiving a complaint by an aggrieved party. The Commission Rules of Procedure complement § 10(a) by providing that the case must be assigned to:

a staff investigator who shall endeavor to gather promptly all information necessary and relevant to the making of a fair determination of the alleged discrimination. Any such investigation ... shall conclude with a written finding ....

COMAR 14.03.01.03A. Additionally, a fact finding conference may be held pursuant to COMAR 14.03.01.03B for the purposes of:

defining the issues contained in a complaint, determining which elements are undisputed, resolving those issues which are susceptible of resolution and ascertaining

whether or not there is a basis for a negotiated settlement of the complaint.

Finally, COMAR 14.03.01.03C and 14.03.01.03E respectively authorize the Commission investigator and executive director to serve interrogatories and issue subpoenas ad testificandum or duces tecum to aid in the fact finding quest.

Should the Commission find that no probable cause exists for believing that illegal discrimination has taken place, the complainant may make a request for reconsideration to the executive director, who must "review the entire file, and, in his discretion, shall grant or deny the application for reconsideration." COMAR 14.03.01.05B. If the application is granted, further investigation may ensue. *Id.* Finally, based upon the entirety of the Commission's investigation, a final determination is reached on whether there is probable cause to believe a discriminatory act has been or is being committed.

The Commission investigation is conducted to protect the respondent against frivolous charges by "insur[ing] the reliability of the information in the complaint." *Gee v. Mass Transit Administration,* 75 Md.App. 253, 261–62, 540 A.2d 1194 (1988). As the Court of Appeals observed in *Banach v. State Commission on Human Relations,* 277 Md. 502, 514, 356 A.2d 242 (1976), "[T]he investigative process [was designed to] flesh out the charges made by the individual before the respondent was called upon to answer them." If the administrator finds that probable cause exists to believe that discriminatory acts are being committed, § 10(b) directs the Commission to take conciliatory action to eliminate the discrimination. *See also* COMAR 14.03.01.06. Only after these efforts have failed do the charges of discrimination become formal, triggering the employer's right to notice and a public hearing under § 11. *See also* COMAR 14.03.01.07A(1).

In view of this statutory scheme, it is clear that the legislature intended to vest within the sound discretion of the Commission the decision of whether to prosecute a

discrimination claim. These provisions merely authorize the Commission to commence investigative activities so that it can determine whether the claims of discrimination are well founded and warrant further administrative action. Nowhere does the statutory or regulatory language provide an adjudicatory hearing at this stage of the proceedings. Nor is one mandated by the due process clauses of the Fourteenth Amendment or Article 24 of the Declaration of Rights. *Vavasori v. Comm'n on Human Relations*, 65 Md.App. 237, 248, 500 A.2d 307 (1985). The fact finding conference authorized by COMAR 14.03.01.03A is not a hearing as envisioned by the APA. The Court of Appeals in *Solely v. State Commission on Human Relations*, 277 Md. 521, 525, 356 A.2d 254 (1976) observed that the type of hearing contemplated by the APA is a "quasi-judicial" hearing where the "traditional safeguards" of fairness must be observed. These procedures are not necessary at the "nonjudicial" investigative stage. *See Banach, supra,* at 515, 356 A.2d 242 (*quoting Atchison & S.F. Ry. Co. v. Kansas Commission on Civil Rights*, 215 Kan. 911, 529 P.2d 666 (1974)).

During the investigation mandated by Article 49B, § 10, "... the Commission is attempting to discover and procure evidence, as opposed to proving a pending charge or complaint." *Equitable Tr. v. State of Md. Comm'n*, 42 Md. App. 53, 61, 399 A.2d 908 (1979), *rev'd on other grounds,* 287 Md. 80, 411 A.2d 86 (1980). Unlike a court or quasi-judicial body, the Commission's "power of inquisition" does not depend on a "case or controversy" for its right to obtain evidence. *Banach, supra,* at 511–12, 356 A.2d 242 (*quoting United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401, 411 (1950)). Indeed, the adjudicatory function of the Commission pursuant to Article 49B, § 11 is not invoked unless and until the Commission's investigation concludes with a finding that probable cause exists for a belief that the complainant's charge of discrimination is meritorious and the Commission's duty to attempt resolution of the problem by agreement has failed. We find

support for our conclusion in the decisions of courts in other jurisdictions which have spoken to the issue. *Mowrey v. Iowa Civil Rights Commission,* 424 N.W. 2d 764 (Iowa App.1988); *Donnelly Associates v. District of Columbia Historic Preservation Review Board,* 520 A.2d 270 (D.C. App.1987); *New Travel, Inv. v. District of Columbia Office of Human Rights,* 530 A.2d 217 (D.C.1987); *Overseas Commodities Corporation, Inv. v. Dockman,* 389 N.W.2d 254 (Minn.Ct.App.1986); *Baker v. Pennsylvania Human Relations Commission,* 507 Pa. 325, 489 A.2d 1354 (1985); *Lamont v. Rogers,* 479 A.2d 1274 (D.C.1984); *Estabrook v. Iowa Civil Rights Commission,* 283 N.W.2d 306 (Iowa 1979); *Bush v. City of Wichita,* 223 Kan. 651, 576 P.2d 1071 (1978); *Miller v. Alcoholic Beverages Control Commission,* 340 Mass. 33, 162 N.E.2d 656 (1959); 1 F. Cooper, *State Administrative Law* 127 (1965) ("Agencies frequently conduct informal preliminary inquiries to determine whether or not formal proceedings should be instituted. Even though the formal proceeding, if instituted, would be a contested case, the preliminary inquiry is not included within the scope of the statutory definition.")

### (b) The Constitutional Right to Judicial Review

■ Appellant alternatively launches a variety of constitutional assaults on the validity of Art. 49B, § 10(d), none of which we find persuasive. He first argues that § 10(d) impermissibly delegates the power of judicial review to the EEOC and the federal judiciary. Such a delegation is prohibited, appellant argues, by Md. Const., Art. IV, § 1, which provides that "[t]he Judicial power of this State is vested in a Court of Appeals, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court." While the power of judicial review over decisions of Maryland administrative agencies is certainly one which must be vested, if at all, only in the courts enumerated in Article IV, § 1, to interpret § 10(d) as delegating this power to the EEOC and federal courts would distort beyond recognition the intend-

ed import of that provision. § 10(d) makes no attempt to affect the availability of any form of review in cases over which the EEOC has jurisdiction. These cases received no judicial review either before or after the enactment of 10(d). No reasoned analysis would conclude that by failing to provide judicial review for this class of cases, the General Assembly affirmatively delegated such power to federal sources. To the contrary, the express purpose behind § 10(d) was none other than to provide a right of review by the circuit courts of this State for a narrow class of no probable cause determinations. Neither can appellant convincingly denounce § 10(d) as improperly delineating those cases for which judicial review is available. The General Assembly chose to use the scope of the EEOC's enforcement jurisdiction as a means of defining those Commission determinations for which review would be available. In essence, where the EEOC's subject matter jurisdiction ends, the right to judicial review of the Commission's no probable cause determination begins. This line insures that discrimination complainants could obtain review if no alternative forum for addressing their grievances were available. Indeed, Article 49B is but a component in a comprehensive national civil rights enforcement scheme, as the Supreme Court of the United States has observed in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 64 n. 4, 100 S.Ct. 2024, 2031, n. 4, 64 L.Ed.2d 723, 734 n. 4 (1980); *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 764, 99 S.Ct. 2066, 2075, 60 L.Ed.2d 609, 621 (1979). Not surprisingly, there is a significant degree of jurisdictional overlap between the federal and state agencies. When federal and state agencies have concurrent enforcement jurisdiction over a particular area of civil rights, a full panoply of procedural safeguards at the state level is unnecessary to guarantee the protection of those rights. Recognizing this scheme, the General Assembly quite appropriately chose not to provide judicial review where other mechanisms to enforce anti-discrimination legislation were available. This jurisdictional parameter is constitutionally sound.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.