BANACH ET AL. *v.* STATE OF MARYLAND COM-
MISSION ON HUMAN RELATIONS

[No. 133, September Term, 1975.]

*Decided April 14, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Francis D. Murnaghan, Jr.,* with whom was *Nell B. Strachan* on the brief, for appellants.

*Philip J. Tierney, General Counsel,* with whom were *Jacob J. Edelman* and *Edelman, Levy & Rubenstein* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 517 *infra.*

This appeal stems from a proceeding to enforce a subpoena duces tecum issued by the State of Maryland Commission on Human Relations (the commission) directing the A. S. Abell Company, publisher of the Baltimore Sun newspapers, and its personnel manager (collectively referred

to herein as appellants) to produce certain employment records in connection with a preliminary investigation then being conducted by the commission into alleged discriminatory practices. When appellants failed to produce the records on the designated date, the commission successfully petitioned the Circuit Court of Baltimore City (Ross, J.) for an order requiring compliance with the subpoena. After an appeal was taken from that order, we granted a writ of certiorari prior to a consideration of the case by the Court of Special Appeals. We affirm.

Between October 1973 and August 1974, four persons filed complaints with the commission alleging various discriminatory practices by appellants in their employment policies. Allegations in the complaints ran the gamut from specific instances of discrimination based on sex, race and religion to general charges made on behalf of certain groups or classes. These complaints were brought to the attention of appellants in November 1974 when they apparently received copies from the commission together with requests for information pertaining to personnel policies. When the requests were not met to the satisfaction of the commission, one of its staff members forwarded an "interrogatory," containing a series of questions, in connection with each of the complaints. Appellants, through counsel, objected at this point to the requests for information, primarily on the grounds that the four complaints were couched in general and conclusory language and thus failed to comply with the statutory requirement that "the particulars" of each complaint be set forth.[1]

---

1. This was a reference to Maryland Code (1957, 1972 Repl. Vol.) Art. 49B, § 12 (a) which provides:

"(a) Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission ... a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, State agency, department or board alleged to have committed the act of discrimination together with *the particulars* thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission." (emphasis added).

Appellants' objections triggered an elaborate exchange of correspondence between their counsel and counsel for the commission in which each outlined at great length the merits of his client's position. Commission counsel at one point proposed as an alternative that, if response to the interrogatories appeared too burdensome to appellants, an investigative unit be permitted "a site inspection," which might include "a review of relevant files and interviews with company officials." Appellants declined this offer on the basis that, in any event, inadequate particularization of the charges prevented "preparation" for the suggested site inspection.

Ultimately, the chairman authorized in writing "a preliminary investigation" pursuant to Maryland Code (1957, 1972 Repl. Vol.) Art. 49B, § 12 (b), citing receipt by the commission of "reliable information" that appellants "ha[d] been engaged, or [are] engaging in discriminatory practices within the scope of Article 49B . . . ." [2] When a renewed request to obtain the previously sought information proved unsuccessful, the chairman signed the subpoena duces tecum which precipitated this dispute. The subpoena directed appellants to produce an assortment of records and documents relating to their recruitment, hiring and promotion policies. When appellants refused to comply with the subpoena, the commission filed a petition in the circuit court recounting the efforts that had been made to obtain the desired information and requesting enforcement.

In ordering production of the documents sought in the subpoena, Judge Ross interpreted § 14 (d) of Art. 49B as authorizing the use of subpoenas in the preliminary

---

2. Section 12 (b) provides:

"(b) Whenever the Commission has received *reliable information* from any individual or individuals that any person has been engaged or is engaged in any discriminatory practice within the scope of this article, and after *a preliminary investigation* by the Commission's staff authorized by the chairman or vice-chairman it is satisfied that said information warrants the filing of a complaint, the Commission, on its own motion, and by action of not less than four commissioners, may issue a complaint in its name in the same manner as if the complaint has been filed by an individual." (emphasis added).

investigation stage preceding the issuance of a formal complaint. Appellants attack this decision on three grounds:

I That the commission lacks the power to issue subpoenas in connection with a preliminary investigation conducted pursuant to § 12 (b) of Art. 49B and prior to the filing of a formal complaint.

II That absent compliance with the requirement of particularity applicable to complaints of alleged discrimination, the commission cannot compel production of documents by subpoena.

III That § 12 (b) requires a determination, which was not made here, that the information received by the commission is "reliable" before it can initiate a preliminary investigation.

I

In *Okla. Press Pub. Co. v. Walling*, 327 U. S. 186, 208, 66 S. Ct. 494, 90 L. Ed. 614 (1946), the Supreme Court articulated a threefold test for determining the validity of a subpoena issued by an administrative agency: Whether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad. It is the first requirement, statutory authority, that appellants contend is lacking here. They maintain that the subpoena power of the commission does not extend to a preliminary investigation, but is available only for an investigation conducted pursuant to § 13 or in connection with a hearing under § 14 of Art. 49B following the issuance of a formal complaint, *i.e.* a complaint which is sufficiently particularized.[3]

---

3. In pertinent part, § 13 provides:

"(a) After the filing of any complaint the executive director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter referred to as the 'respondent'), against whom or which the complaint is made.

"(b) If the finding is that there is probable cause for believing a

That the Legislature may validly confer upon administrative agencies such as the Human Relations Commission the power to compel production of information for purposes of preliminary investigation is well settled. *United States v. Morton Salt Co.*, 338 U. S. 632, 642-43, 70 S. Ct. 357, 94 L. Ed. 401 (1950); *Vulcan, Inc. v. Md. Home Imp. Comm'n*, 253 Md. 204, 210, 252 A. 2d 62 (1969). We look first, then, to the applicable statute to determine whether it authorizes issuance of the subpoena duces tecum in question here. Section 14 (d) of Art. 49B, entitled "Power of Commission to administer oaths, etc.; subpoenas," provides in relevant part:

> "In the *administration and enforcement* of the provisions of *these several subtitles*, the Commission has power to administer oaths and to issue subpoenas, to compel the attendance and testimony of witnesses and the production of books, papers, records and documents relevant or necessary for *proceedings* under the *particular subtitle. . . ."* (emphasis added).

The statute then provides that enforcement of a subpoena, in the event of refusal to comply, may be sought in the circuit court, which, upon a finding that the matters or documents sought are "relevant or necessary for the *proceedings* of the Commission," may compel obedience under the penalty of contempt. (emphasis added.) [4]

discriminatory act has been or is being committed within the scope of any of these subtitles, the Commission's staff immediately shall endeavor to eliminate the discrimination by conference, conciliation and persuasion.

"(c) If an agreement is reached for the elimination of the discrimination as a result of the conference, conciliation and persuasion the agreement shall be reduced to writing and signed by the respondent, and an order shall be entered by the Commission setting forth the terms of the agreement. The Commission shall not enter an order at this stage of the proceedings unless it is based upon a written agreement. If no such agreement can be reached, a finding to that effect shall be made and reduced to writing with copies furnished to the complainant and to the respondent."

**4.** Subsection (a) of § 14, which is entitled "Hearing," provides:
"(a) *Certification of file; notice to respondent; hearing tribunal;*

508

Appellants advance two arguments in support of their contention that § 14 (d) does not contain the authority attributed to it by the commission. First, they say, the subpoena power is granted only to the commission itself, whereas it is the commission's staff that is authorized by § 12 (b) to conduct the preliminary investigation for which the subpoena is sought here. The short answer to this argument is that it was the commission chairman, who, after authorizing the preliminary investigation in accordance with § 12 (b), signed the subpoena duces tecum on behalf of the commission. Thus it is the commission, not its staff, which authorizes the issuance of subpoenas in connection with preliminary investigations. As the presiding officer of the commission, and the only member permitted by law to be compensated for his services, the chairman was logically

<hr />

*place of hearing; transcript; duty of Commission's counsel; disqualification to participate in hearing.* — In case of failure to reach an agreement for the elimination of the acts of discrimination and upon the entry of findings to that effect, the entire file including the complaint and any and all findings made shall be certified to. The chairman shall cause a written notice to be issued and served in the name of the Commission together with a copy of the complaint requiring the respondent to answer the charges of the complaint at a public hearing before the Commission at such time and place as may be certified in the notice.

"The chairman shall thereupon appoint a hearing tribunal of five persons who shall be members of the Commission to hear such complaint . . . in the county where the alleged act of discrimination took place. . . ."

Section 14 (b) accords respondents the full right to be heard at the commission hearing, including the right to file a written answer to the complaint and the right to present their case before the commission either with or without counsel. Testimony at the hearing is required by § 14 (c) to be under oath and recorded. The commission is empowered by § 14 (e), upon finding that the respondent has engaged in any discriminatory act, to issue "an order requiring the respondent to cease and desist from the discriminatory acts and to take such affirmative action as will effectuate the purposes of the particular subtitle." Should the commission find that no discriminatory act was committed by the respondent, an order is to be filed, under § 14 (f), dismissing the complaint. In either case the commission is required to state its findings of fact.

contemplated by the Legislature to be the person who would execute such papers on behalf of the commission when such issuance has been authorized. *Cf. Kansas Commission on Civil Rights v. Carlton,* 216 Kan. 735, 533 P. 2d 1335, 1338-39 (1975). Nothing in § 14 (d) requires the individual members of the commission to sign all subpoenas issued in its name.

Secondly, it is argued that the only "proceedings" for which subsection (d) authorizes subpoenas are the investigation prescribed by § 13 and the § 14 hearing. This contention that the subpoena power is limited to the post-complaint investigation and hearing stages finds no support in the language of § 14 (d) itself. First, the opening sentence, "In the administration and enforcement of the provisions of these several subtitles," suggests a distinction between the "administrative" and "enforcement" functions of the commission. Since only §§ 12-16 of Art. 49B are grouped under the "enforcement" subtitle, the General Assembly apparently intended to extend the use of subpoenas even to areas beyond enforcement investigations and hearings. One such area is suggested by § 3 which empowers the commission, "[w]henever any problem of racial discrimination arises, [to] hold an investigatory hearing" for the purpose of promptly resolving the problem "by the gathering of all the facts from all the interested parties and making such recommendations as may be necessary." The "enforcement" subtitle, in any event, is merely one of five subtitles contained in Art. 49B.

Even more significant, in terms of the statutory language, is the use of the word "proceedings" in § 14 (d) rather than "hearings." In our view, this further reflects an intent on the part of the Legislature to authorize subpoenas beyond the narrow limits urged by appellants. Administrative investigations, a vital part of the administrative function, are commonly referred to as "proceedings." *See* 1 K. Davis, Administrative Law § 3.01 (1958). The word "proceedings" is a term of broad scope, encompassing both the investigative

and adjudicative functions of an administrative agency. *United States v. Fruchtman,* 421 F. 2d 1019, 1021 (6th Cir.), *cert. denied,* 400 U. S. 849 (1970); *Rice v. United States,* 356 F. 2d 709, 715 (8th Cir. 1966). Our conclusion that the word "proceedings" was used in its broad sense here is reinforced by the provision in the Maryland Administrative Procedure Act, Code (1957, 1971 Repl. Vol.) Art. 41, § 244 (c), which, in defining the term "contested case," clearly ascribes a somewhat broader meaning to the term "proceedings" than to "an agency hearing."

We find no support for appellants' position in *State, Colo. Civil Rights Com'n v. Adolph Coors Corp.,* 29 Colo. App. 240, 486 P. 2d 43, *cert. denied,* Colo. Sup. Ct. (1971), or in *Pennsylvania H.R. Com'n v. United States Steel Corp.,* 458 Pa. 559, 325 A. 2d 910 (1974), where the courts were faced with a similar question. Although in both cases the courts found the requisite statutory authority lacking, the statutes in question differed markedly from Art. 49B.[5] Not

---

5. In relevant part, the Colorado statute, C.R.S. § 80-21-5 (1963), granted the following powers and duties to the Colorado Antidiscrimination Commission:

\* \* \*

"(4) To receive, *investigate,* and pass upon complaints alleging discrimination in employment, . . . or the existence of a discriminatory or unfair employment practice . . . .

\* \* \*

"(6) (a) To hold *hearings* upon any complaint made against . . . an employer, . . . *to subpoena witnesses* and compel their attendance, to administer oaths and take the testimony of any person under oath, and to compel such employer . . . *to produce for examination* any books and papers relating to any matter involved in such complaint. *Such hearings* may be held by the commission itself, or by any commissioner, or by the coordinator, or by any hearing examiner appointed by the commission. If a *witness* either fails or refuses to obey a subpoena issued by the commission, the commission may petition the district court having jurisdiction for issuance of a subpoena in the premises . . . ." (emphasis added).

The Pennsylvania statute, Pa. Stat. Ann. Tit. 43, § 957 (1964, 1975 Supp.), authorized the Human Relations Commission in pertinent part:

\* \* \*

"(f) To initiate, receive, *investigate* and pass upon complaints charging unlawful discriminatory practices.
"(g) To hold *hearings, subpoena witnesses,* compel their

surprisingly, therefore, in view of the statutory language confronting those courts, they concluded in each instance that the subpoena power was not available in the preliminary investigation stage.

In *Yellow Freight Sys., Inc. v. Kansas Com'n on Civil Rts.*, 214 Kan. 120, 519 P. 2d 1092, 1095 (1974), however, where the relevant statutory provision bore a striking resemblance to the Pennsylvania statute, the Supreme Court of Kansas, in the face of a contention similar to that advanced here, stated:

> "General tenets of administrative law recognize that an agency charged with investigatory duties to ferret out violations of the law can issue subpoenas and make such investigations, even though no formal administrative hearing be pending." (citations omitted).

The Kansas court reasoned that the specific statutory mention of the subpoena power in connection with a scheduled formal hearing should not be read to exclude that power in the preliminary investigation stage, since the power to investigate "necessarily implies the use of . . . subpoena authority." *Id. See Nevada Com'n on Equal Rights of Citizens v. Smith*, 80 Nev. 469, 396 P. 2d 677, 679 (1964); *Application of Broido*, 40 Misc. 2d 419, 243 N.Y.S.2d 101, 104 (1963). As Mr. Justice Jackson said for a unanimous Supreme Court in *United States v. Morton Salt Co., supra*, 338 U. S. at 642-43:

> "The only power that is involved here is the power

---

attendance, administer oaths, take testimony of any person under oath or affirmation and, *in connection therewith*, to require the *production* for examination of any books and papers relating to any matter under investigation where a complaint has been properly filed before the Commission. The Commission may make rules as to the issuance of subpoenas by individual Commissioners. In case of contumacy or refusal to obey a subpoena issued to any person, the Court of Common Pleas of Dauphin County or any court of common pleas within the jurisdiction of which *the hearing* is to be held . . . may issue to such person an order requiring such person to appear before the Commission, there to produce documentary evidence, if so ordered, or there to give evidence touching the matter in question . . . ." (emphasis added).

to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law."

What appellants overlook, in our judgment, is the emphasis which Art. 49B places upon the investigatory function of the commission. Section 12 (b) requires a "preliminary investigation" before the commission may issue a complaint, and § 13 (a) requires a further investigation by the staff "[a]fter the filing of any complaint." In requiring the commission to conduct a "preliminary investigation" to satisfy itself as to the reliability of the information received from an individual, the Legislature took pains to insure that no potential respondent would ever be subjected to a commission complaint without a "preliminary investigation," even though § 13 (a) mandates a further investigation. Also, the Legislature undoubtedly recognized that discrimination, in its many forms, is frequently practiced in a subtle manner. Without the right to compel production of evidence, the commission's power to investigate unlawful discriminatory practices would be reduced to a meaningless gesture.

We hold, therefore, that the Human Relations Commission possesses statutory authority to issue a subpoena

duces tecum in connection with a preliminary investigation under Art. 49B, § 12 (b).

## II

The argument that appellants were not provided the "particulars" required by § 12 (a) is, at least in part, attenuated by our holding that subpoenas may be issued during the investigative stage preceding the filing of a formal complaint. In essence, appellants contend that since the four individual complaints are defective due to the absence of the necessary particulars, the commission is not empowered to issue the subpoenas. This argument misconceives the role of the administrative complaint and the relationship between the investigative and adjudicatory functions of the commission.

Notwithstanding the "particulars" requirement, a complaint filed with the commission under § 12 (a) merely triggers the investigative process. If, as we have seen, the commission then wishes on the strength of such a complaint to issue a complaint in its own name, it must first conduct a preliminary investigation. In any event, an investigation is mandated by § 13 (a) "after the filing of any complaint," and it is only after the results of that investigation are reduced to written findings that the statute requires notice to be given the respondent against whom the complaint has been made. A finding of probable cause to believe that a discriminatory act within the scope of Art. 49B has been committed may then produce an agreement through conciliation or alternatively may result in service of the complaint upon the respondent with written notice requiring him to answer the charges contained therein at a public hearing. In this case, as we have emphasized, the proceedings have barely reached the "preliminary investigation" stage contemplated by § 12 (b), which must precede the filing of a formal complaint by the commission. Nor, of course, have any of the steps outlined in §§ 13 and 14 been initiated.

The question, therefore, is whether the complaints filed by

the four individuals pursuant to § 12 (a) must meet the "particulars" requirement before the commission may conduct a preliminary investigation. We do not think so. Pursued to its logical conclusion, the argument advanced by appellants would mean that a formal complaint, at least one capable of meeting the "particulars" test, must be filed prior to the commencement of a preliminary investigation. This notion is at odds with the carefully conceived scheme enacted by the Legislature, authorizing the commission to make the inquiry necessary to determine whether more formal proceedings are in order.

In enacting the enforcement subtitle of Art. 49B, the Legislature recognized that complaints would frequently be filed by individuals unschooled in the legalistic complexities of the pleading process. It was never intended, therefore, that such administrative complaints should be required to pass muster at the threshold. It was assumed that the investigative process would flesh out the charges made by the individual before the respondent was initially called upon to answer them. *Cf. Graniteville Co. (Sibley Div.) v. Equal Employ. Op. Com'n,* 438 F. 2d 32, 37-39 (4th Cir. 1971). This contrasts with the more exacting requirements applied to pleadings filed in judicial proceedings. Consequently, most of the authorities relied upon by appellants to support their position are inapposite since they involved, not administrative complaints, but civil actions filed in federal courts under the Federal Civil Rights Act and were thus subject to the rubrics of the Federal Rules of Civil Procedure.[6]

Nor do *Pennsylvania H.R. Com'n v. United States Steel Corp.,* and *State, Colo. Civil Rights Com'n v. Adolph Coors Corp.,* both *supra,* heavily relied upon by appellants, afford support for their position. As we observed earlier, in both cases the applicable statute tied the subpoena power to the hearing stage, and this goes far to explain the result reached

---

6. *See, e.g.,* Ogletree v. McNamara, 449 F. 2d 93, 98 (6th Cir. 1971); Edwards v. North American Rockwell Corp., 291 F. Supp. 199 (C.D. Cal. 1968).

by the two courts. In *United States Steel,* the commission had already issued its formal complaint, which was found wanting in the "particulars" requirement. Similarly in *Coors,* the Colorado commission had there scheduled the complaint for hearing after attempts at conciliation had failed. It was not until notice of the hearing had been given that the subpoena in controversy was issued and only at that point was the complaint challenged as lacking in "particulars."

Moreover, the posture in which this case reaches us is far different from that which prevailed in *Ferguson v. United Parcel Serv.,* 270 Md. 202, 311 A. 2d 220 (1973), *cert. denied,* 415 U. S. 1000 (1974), and in *St. Comm'n on Human Rel. v. Malakoff,* 273 Md. 214, 329 A. 2d 8 (1974). In each of those cases, we were confronted with decisions of the commission in the quasi-judicial role envisioned by the hearing provisions of § 14. As *Ferguson* clearly demonstrates, it is at the adjudicatory stage of the administrative proceeding that the parties must be accorded such traditional elements of fair play as notice of charges and opportunity to be heard.

The distinction we make here was also drawn in *Atchison, T. & S.F. Ry. Co. v. Kansas Com'n on Civil Rts.,* 215 Kan. 911, 529 P. 2d 666, 673 (1974), in which the court noted that the term "hearing" refers to quasi-judicial proceedings where the "traditional safeguards" of fairness must be observed, while the same test need not be met in the "nonjudicial" investigative stage. It is only when the conciliation process prescribed by § 13 fails and the hearing stage contemplated by § 14 is invoked that the investigative yields to the adjudicative function. *See Atchison, Topeka and Santa Fe Railway Co. v. Lopez,* 216 Kan. 108, 531 P. 2d 455, 462 (1975). Only at that juncture must the charges be capable of withstanding attack for lack of particularity.

The power to conduct the preliminary investigation and to issue the subpoena duces tecum, therefore, cannot be denied because of any possible lack of particularity in the four individual complaints.

### III

For their final argument, appellants contend that § 12 (b), which provides for a preliminary investigation upon receipt by the commission of "reliable information from any individual," must be read to require "that such reliability be established as a prerequisite to a preliminary investigation . . . ." In essence, this amounts to a contention that the commission is charged with finding "probable cause" before it may institute a preliminary investigation. To that extent, the short answer is that no such requirement appears in § 12; it is expressly provided in § 13 (b) that a finding of probable cause to believe that a discriminatory act has been committed be made, but only after the completion of all investigations and the filing of a formal complaint. Section 12 (b) can only be read to mean that receipt of reliable information and a preliminary investigation are together preconditions to the filing of a formal complaint, not that a determination of reliability is a prerequisite to the preliminary investigation.

The statutory scheme aside, the cases afford no support for appellants' position. The determination whether the information received from individuals is "reliable" can only rest within the sound administrative discretion of the commission. *See Application of Waterfront Com. of New York Harbor*, 32 N. J. 323, 160 A. 2d 832, 838-39 (1960); *cf. Vulcan, Inc. v. Md. Home Imp. Comm'n, supra*, 253 Md. at 210. As we said in *Sollins v. Baltimore County*, 253 Md. 407, 411, 252 A. 2d 819 (1969):

> " 'It is a well established principle that where the action of an administrative agency is within the scope of its delegated authority, and does not affect the vested rights of liberty or property, the Court will not review its exercise of discretion unless its power was fraudulently or corruptly used. . . .' "

Clearly, there was no abuse of discretion here where the commission has received four separate complaints which appellants now concede were sufficient to warrant a preliminary investigation. As a practical matter, it is

difficult to see how reliability of the information received can be reasonably established without the preliminary investigation mandated by § 12 (b). To accept appellants' argument would require that yet another investigative layer be read into § 12 (b) to serve the narrow function of enabling the commission to ascertain whether the information was sufficiently "reliable" to justify a "preliminary investigation," clearly an absurd result.

We hold, therefore, that the circuit court acted properly in ordering production of the documents and information specified in the subpoena duces tecum served upon appellants.

*Judgment affirmed; appellants to pay costs.*

*Murphy, C. J., dissenting:*

While I agree completely with the majority that "the Legislature may validly confer upon administrative agencies such as the Human Relations Commission the power to compel production of information for purposes of preliminary investigation," I respectfully dissent from the Court's holding that the Legislature has in fact granted such authority to the Commission in the conduct of the "preliminary investigation" mandated by Code, Article 49B, § 12 (b). In holding that the Commission has the power to issue subpoenas in connection with a § 12 (b) "preliminary investigation," the majority overlooks the statutory framework which evidences a clear statutory purpose to grant subpoena power to the Commission only *after* the filing of a complaint by either an aggrieved person under § 12 (a) or by the Commission itself under § 12 (b).

This case originally involved four complaints filed pursuant to § 12 (a) by individuals alleging discrimination by The A. S. Abell Company. The Commission attempted to obtain detailed data from the personnel manager, Mr. Banach; on advice of counsel, he refused to supply the data on the ground that the complaints lacked the particularity which § 12 (a) requires. With these complaints in hand,

however, and based in particular on the information contained in the Swagger [1] and Dickman [2] complaints, the Commission decided to utilize the alternative procedure available to it under § 12 (b); that subsection requires a "preliminary investigation" by the Commission's staff as a condition precedent to the filing of a complaint by the Commission on its own motion. As part of this "preliminary investigation," the Commission issued a subpoena duces tecum which it deemed authorized by § 14 (d). Therefore, the central issue in the case became whether § 14 (d) provided for the issuance of a subpoena in a § 12 (b) "preliminary investigation" by the Commission.

That each part or section of a statute should be so construed that all its parts harmonize with each other and are consistent with the statute's general object and scope is well settled. *Associated Acceptance Corp. v. Bailey*, 226 Md. 550, 556, 174 A. 2d 440 (1961); *Pittman v. Housing Authority*, 180 Md. 457, 464, 25 A. 2d 466 (1942). "[I]f there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous,

---

1. The Swagger complaint, in its entirety, states: "The company hires and retains fewer minority group people than could be reasonably expected in the community which has approximately ¹/₂ minority population. Women employees are retained in lower-paid and least responsible positions compared with male employees. Employees who are black or otherwise obviously members of racial minorities or of other national origin are in lesser-paid or less responsible positions compare [*sic*] with whites. The company has relatively very few supervisors who are women or racial minority members and the few they have supervise other women or minority members. The company indicates it will not change the practices in hiring and promotion which have led to these conditions. From personal knowledge, I feel the A. S. Abell Co. has discriminated in hiring & promotion, to the detriment of employees, based on sex, race or national origin. I represent members and people eligible for membership in the Washington-Balto. Newspaper Guild."

2. The Dickman complaint, in its entirety, stated: "I believe the A. S. Abell Co. has discriminated in the areas of race and sex involving hiring, promotion, transfer, on-the-job segregation. The general policies and practices of the company do not reflect the statements put forth in an affirmative action program published January, 1974. Although the company has said it would make efforts to change such practices that have continued for decades, no major improvements have occurred. The discriminatory practices are continuing. I am bringing these charges on behalf of the fair employment practices committee of the Baltimore-Washington Newspaper Guild as the chairperson of the committee and on personal knowledge of discrimination."

meaningless or nugatory." *Thomas v. Police Commissioner,* 211 Md. 357, 361, 127 A. 2d 625 (1956).

When these principles are applied to the statutory scheme of §§ 12-14, it is plain that the Commission's subpoena power does not attach until after a proper complaint is filed under § 12 (a) or 12 (b). The statutory scheme provides for investigation, conciliation, and hearing processes for alleged instances of discrimination. We are here concerned with the investigation process, for which §§ 12 and 13 provide dual procedures. First, if an individual files a particularized complaint under § 12 (a), § 13 (a) instructs the Commission's staff to then make a "prompt investigation and ascertainment of the facts," and it is authorized by § 14 (d) to issue subpoenas in aid of its investigation. The § 12 (b) procedure, under which the Commission proceeded in this case, is activated by the reception of "reliable information" (as determined by the Commission), which need not be in the form of a particularized complaint. Before a § 13 staff investigation is warranted, however, § 12 (b) requires a "preliminary investigation" by the Commission's staff to determine whether the information warrants the filing of a complaint by the Commission itself. That the "preliminary investigation" mandated by § 12 (b) is not the same as the "prompt investigation" of § 13 is wholly apparent. The § 13 investigation occurs "after the filing of *any* complaint." Since the § 13 investigation would follow *after* a "preliminary investigation" and the Commission's filing of a § 12 (b) complaint, by permitting the subpoena power to be used in a "preliminary investigation" *prior* to the filing of a Commission complaint the majority has rendered the full-blown § 13 investigation nugatory and duplicitous. To avoid this needless result, the Court should have recognized that the subpoena power attached only to a post-complaint § 13 investigation; the pre-complaint § 12 (b) "preliminary investigation" would consist of staff appraisal of the information which the Commission received and its suitability for incorporation into a particularized Commission complaint.

That the statutory scheme does not properly permit the § 14 (d) subpoena power to attach to a § 12 (b) "preliminary

investigation" is also indicated by the history of § 12 (b). That subsection was not enacted until 1969, six years after the enactment of § 12 (a). See Chapter 153 of the Acts of 1969. It was intended to permit the Commission to initiate action when it received reliable information not cast in proper complaint form under § 12 (a), or information provided by persons other than those authorized to file complaints of discrimination under § 12 (a). Just as the Commission is not invested with subpoena power prior to the jurisdictional basis of the filing of an individual's complaint under § 12 (a), neither does it have any subpoena power prior to the jurisdictional basis of the filing of the Commission's own complaint under § 12 (b).

Support for this interpretation is further provided by the origin of the § 14 (d) subpoena power and its placement by the Legislature within the statutory scheme. Section 14 (d) was enacted into law in 1963, concurrently with § 12 (a) and § 13. See Chapter 228 of the Acts of 1963. At that time the subpoena power could only attach to a § 13 investigation (after a particularized individual complaint was filed), since § 12 (b) did not exist before 1969. That § 14 (d) continued after 1969 to apply only to § 13 investigations following the filing of a formal complaint is indicated by its continued placement within § 14, which is focused entirely on the hearing process, from preparation for a public hearing in § 14 (a) to Commission review of the hearing tribunal in § 14 (g). Thus, the word "proceeding" in § 14 (d) is clearly limited by its origin and placement to post-complaint "prompt investigations" under § 13, and does not extend to the "preliminary investigation" of § 12 (b).[3]

The majority's contrary interpretation ascribes to the General Assembly an intent to create needless duplication of Commission investigations, and injects the subpoena power into an area where it was not intended to apply. I would, therefore, reverse the judgment of the lower court.

---

[3]. The Commission's own Rules of Procedure recognize that the statute grants subpoena powers only in connection with an investigation after a proper complaint has been filed, or with respect to a Commission hearing. See Commission Rule XI, XIV.