# STATE OF MARYLAND COMMISSION ON HUMAN RELATIONS *v.* BALTIMORE COUNTY ET AL.

[No. 1270, September Term, 1979.]

*Decided June 16, 1980.*

46

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

*Louis A. Young, Assistant General Counsel,* with whom was *Risselle Rosenthal Fleisher, General Counsel,* on the brief, for appellant.

*Phyllis C. Friedman, Deputy County Solicitor,* with whom was *Leonard S. Jacobson, County Solicitor,* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

—background—

So awesome was the power of the subpoena looked upon at common law that the English courts were only able to obtain it by subterfuge. It was "invented" by John Waltham, bishop of Salisbury and chancellor to King Richard II, by a strained interpretation of the statute of Westminster 2. This dangerous "novelty devised by the subtlety of Chancellor Waltham, against the form of the common law" caused "the commons [to be] repeatedly urgent to have the writ of *subpoena* entirely suppressed" throughout the reigns of both Henry IV and V.[1]

Despite its illegitimate birth and legislatively precarious early life, it has over the centuries been accepted as so commonplace that in Maryland it is entrusted not only to the courts, but to over forty administrative agencies ranging

---

1. II Cooley's *Blackstone* (4th ed.) at 893.

alphabetically from the Aviation Commission to the Workmen's Compensation Commission, and in scope from cosmetologists to county commissioners — for enforcement of dog license requirements.[2] Ironically, however, the Legislature has withheld the power not only from the Governor of Maryland but its Attorney General as well.

The utility of the compulsion process as an investigatory device was acknowledged by *Blackstone* and is as broad in scope as its user's imagination. Its careful use and seldom abuse, up to now, whether ad testificandum (to give evidence), or duces tecum (to produce books or records), has substantially diminished the original public fear of any abuse of this power by government officials.

Such complacent acceptance is seen most pronouncedly during the last half century in the attitude of courts in enforcing administrative investigatory subpoenas. *Equitable Trust Company v. State of Maryland Commission on Human Relations,* 287 Md. 80, 89-100 (1980). Between 1924 and 1950 the Supreme Court has moved from the limited enforcement view expressed by Mr. Justice Holmes in *Federal Trade Com. v. American Tobacco Co.,* 264 U.S. 298, 306 (1924),

> "The right of access given by the statute is to documentary evidence, — not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it.",

to the language of Mr. Justice Jackson in *United States v. Morton Salt Co.,* 338 U.S. 632, 652 (1950):

> "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy

---

2. See Appendix.

themselves that corporate behavior is consistent with the law and the public interest."

The ephemeral fears of our forefathers appeared more substantial when this Court pointed out in *Equitable Tr. v. State of Md. Comm'n,* 42 Md. App. 53 (1979), that data subpoenaed from 63,000 accounts which would entail 9,600 work hours to supply, at a cost conservatively of $96,000, would have to be produced because:

> " 'If the information or records sought is relevant or material to the charge under investigation and the [agency] proceeds as authorized by the statute, then any inconvenience or difficulty (which is actually inherent in any compulsory process proceeding) must be considered as a 'part of the social burden of living under government.' ' " *Id.* at 71, quoting *EEOC v. U.S. F. & G. Co.,* 414 F. Supp. 227 (D. Md. 1976) which, in turn, quoted from *H. Kessler & Co. v. EEOC,* 53 F.R.D. 330 (N.D. Ga. 1971).

Fortunately for Equitable, the Court of Appeals reversed as *(Equitable Trust Company v. State of Maryland Commission on Human Relations,* 287 Md. 80 (1980)); but unfortunately for others who may be encumbered by this "social burden of living under government", the Court of Appeals was compelled to acknowledge only limited means of relieving the oppressiveness of an agency subpoena.

—the facts—

On January 12, 1976, James H. Whye, a black male employee of nine years with the Baltimore County Department of Highways (the Department), filed with the Maryland Commission on Human Relations (the Commission) a sworn complaint pursuant to Md. Code, Art. 49B, § 9 (a), describing how the Department was maintaining racially segregated facilities for its employees to his detriment. He added a sentence expressing a "feeling" that the Department was discriminating against blacks in hiring practices. On April 22, 1976, he amended his

complaint that he "further believe[d]" that the discrimination extended to promotion practices. The amended complaint was as follows:

"I have worked for the Department of Highways for 9 years as a chauffeur laborer. In the work area there are 2 buildings used by the men as assembling areas. One building is old & used by the Black workers. The other building, which is new & has more facilities is used by the White workers. I believe the Department of Highways is discriminating against me and other Blacks by maintaining segregated facilities. I further believe the Department is discriminating against Blacks as a class in the areas of hiring & promotion." [3]

In its brief, appellant, State of Maryland Commission on Human Relations, states that both complaints "were duly authorized for investigation . . . by then Executive Director of the Commission", presumably referring to the procedure described in Md. Code, Art. 49B, § 10 (a) which states:

"After the filing of any complaint the executive director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter

---

3. The original complaint was similar to its amended counterpart. It read:

"I have worked for the Department of Highways for 9 years as a chauffeur laborer. In the work area, there is a shed where men go to rest. Previously, there had been only one shed and the Black employees used that one. White employees merely stayed in their trucks or offices. The Department built another shed with more facilities. Now the white employees use the better shed, and the Black employees use the older shed. I believe the Department of Highways is discriminating against me and other Blacks by maintaining segregated facilities because of our race. I further feel that the Department of Highways is discriminating against Blacks as a class because of their race in the area of hiring."

referred to as the 'respondent'), against whom or which the complaint is made."

The Commission's staff then pursued the investigation. What then transpired is described by the appellant Commission in its brief.

"During the early stages of the investigation, the Commission, after interviews with both black and white employees of Respondent, made a preliminary determination that the Baltimore County Department of Highways was not maintaining segregated facilities — i.e., that there was no probable cause to believe that the law was in that respect being violated. In order to complete its investigation and to make a determination as to the remaining allegations of the complaint, the Commission's investigator requested from Appellee specific and detailed information regarding appellee employment practices. Appellee, while supplying the Commission with a small portion of the information sought, continually and steadfastly refused to comply with the substantial portion of the Commission's request.

As a result of Appellee's refusal to comply with the Commission's requests for documents and information, the Commission issued, in accordance with Sec. 11 (d) of Article 49B, a subpoena *duces tecum* on August 26, 1976, requesting that the County produce for the Commission's inspection specific documents concerning certain employment practices for the period June 1, 1975 to June 30, 1976."

The substance of the subpoena was as follows:

"In accordance with the authority contained in Article 49B, Section 14 (d) of the Annotated Code of Maryland (1968 Replacement Volume), you are hereby directed to appear before the *Maryland Commission on Human Relations, Suite 300, Metro*

*Plaza, Mondawmin Mall, Baltimore, Maryland 21215* at *10:00 a.m.* on *Friday, September 17, 1976* in the matter entitled *James Whye* vs. *Baltimore County Department of Highways* and deliver to *Frederick J. Dalton, Intergroup Relations Representative* the following documents. The documents are described on the attached 2 pages, on each of which the Executive Director's signature appears.

ALL QUESTIONS REFER TO THE BALTIMORE COUNTY BUREAU OF HIGHWAYS FOR THE PERIOD OF JUNE 1, 1975 THROUGH JUNE 30, 1976.

1. Application of all persons who applied for any jobs with the Bureau.
2. Applications of all persons who were hired for any and all jobs with the Bureau.
3. Applications of all persons whose applications were rejected, with indications of reasons for rejection.
4. Any and all documents, memoranda and other writings or copies thereof describing the duties and qualifications for all vacancies which occurred, indicating how much weight is assigned to each qualification.
5. Any and all written tests or copies thereof, indicating for which vacancies administered.
6. The validation study or copy thereof for any of the tests listed in response to question #5 above.
7. Any and all applications and other writings or copies thereof of persons applying for promotions, indicating names, race and dates of application. If rejected, indicate reason and name and race of the decision maker(s). If selected, indicate dates of promotion and name and race of decision maker.

8. Any and all documents, memoranda and other writings or copies thereof describing the duties and qualifications for all promotional openings which occurred, indicating how much weight is assigned to each qualification.

9. Any and all written tests or copies thereof, indicating for which vacancies administered.

10. The validation study or copy thereof for any of the tests listed in response to question #9 above.

11. All records of or lists of employees as of June, 1976 by job category showing name, race, sex, date of hire, initial job classification and date present job classification became effective."

Upon the refusal of the County to respond, a second subpoena of like import was issued. The County's refusal to comply this time was met with a petition to enforce filed pursuant to Art. 49B, § 11 (d) in the Circuit Court for Baltimore County. After an evidentiary hearing and argument, the trial judge denied the petition because he found that:

1. The petitioner was not a person aggrieved by either hiring or promotion practices within the contemplation of Art. 49B, § 9 (a).

2. That neither the complaint nor evidence showed an occurrence of discrimination in hiring or promotion injurious to the complainant.

3. That the subpoena requisitions were neither " 'relevant' " nor " 'necessary' " to the investigation as required by Art. 49B, § 11 (d).

The Commission has appealed that denial, contending that:

"Where the Commission sought an Order to Compel Production of Documents pursuant to a validly issued Commission Subpoena *Duces Tecum* and

produced evidence at the Circuit Court that the subpoenaed information was relevant and necessary for the Commission's proceedings, the Circuit Court Order denying the Commission's Petition for an Order Compelling Production of Documents was clearly erroneous".

The Commission argues that the court below "was without jurisdiction to rule upon the sufficiency of the allegations made in Mr. Whye's complaint" because that prerogative was solely the executive director's as indicated in Art. 49B, § 10 (a) above. It contends that the court was limited to applying the threefold test in *Banach v. St. Comm'n on Human Rel.*, 277 Md. 502 (1976), for determining the validity of a subpoena:

1. Whether the inquiry is authorized by statute.
2. Whether the information sought is relevant to the inquiry.
3. Whether the demand is too indefinite or overbroad.

Despite appellant's contention to the contrary, the court applied that threefold test. The Commission overlooks that in order for the court to decide whether an inquiry is authorized by statute, or the information sought is relevant, it necessarily must review the scope of the complaint. It also overlooks the fact that § 10 (a) does not provide the executive director a discretionary prerequisite; it mandates that he "shall" consider and "shall" refer "any" complaint for a preliminary investigation.

In this case, as pointed out by appellant itself, there has been full and satisfactory compliance and a conclusion to the segregated facilities charges in Mr. Whye's complaint. That which is at issue is the single sentence wherein Mr. Whye stated:

"I further believe the Department is discriminating against Blacks as a class in the areas of hiring & promoting."

In order to determine whether the statute authorized the inquiry, *Banach, supra* at 506, the complaint must comply with statutory prerequisites, one of which in this case is § 9 (a) elliptically providing that:

> "The complaint shall state ... the act of discrimination together with the particulars thereof ...." [4]

The discriminatory act complained of in regard to segregated facilities was set forth along with the particulars thereof, and the Department admittedly cooperated with the investigation of that complaint. The Commission also admits that the subpoena is not relevant (*Banach, supra*) to that particularized portion of the complaint relating to segregated facilities. The trial judge must therefore look for "the act of discrimination" and "particulars thereof" regarding hiring and promotion practices to see whether the inquiry, which is the subject matter of the subpoena, is authorized by statute. There was obviously no "particular" or specific "act" of discrimination relating to Mr. Whye's hiring or promotion set forth in the complaint and it follows that the complaint, reflecting only the complainant's "belief" or "feeling", is not a sufficient statutory compliance to authorize an inquiry. [5]

In our version of *Equitable Tr. v. State of Md. Comm'n, supra,* we pointed out that the Court of Appeals in *Banach*

---

4. The subsection reads:

"Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the 'Commission') a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, state agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission. A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section."

5. See note 3 *supra.*

addressed the "particulars" requirement of what is now § 9 (a), holding that the failure to particularize the complaints there did not preclude the Commission's power to issue subpoenas while conducting a § 9 (b) preliminary investigation. At first blush that conclusion would seem to support the Commission's contention that *Banach* and its companion case, *Soley v. St. Comm'n on Human Rel.,* 277 Md. 521 (1976), hold that the lack of particulars will not render unenforceable a validly issued investigatory subpoena. But there is a distinction in § 9 (referred to in those cases as § 12) glossed over in appellant's brief, that was obscured in *Banach* and *Soley* because it was not at issue in either.

Section 9 deals with two distinct types of complaints. Section 9 (a) authorizes and addresses an individual complaint, *i.e.,* by "[a]ny person claiming to be aggrieved", which complaint, the statute says, must be particularized. Section 9 (b) authorizes a complaint issued by the Commission itself which it may do simply upon receiving "reliable information" and it is its own judge of reliability. *Banach, supra.* As previously noted, § 10 mandates a preliminary investigation by the Commission's staff *after* the filing of either type of complaint but § 9 (b) authorizes such an investigation *before* the Commission complaint upon the authorization of the chairman or vice-chairman after receipt of such "reliable information."

Originally, the complaints in *Banach* were by four individuals under § 9 (a) and a staff investigation was begun pursuant to § 10 (a). When the Commission's requests for information were objected to by Banach on the ground that these complaints lacked "the particulars" required by § 9 (a), the Commission chairman authorized in writing a "preliminary investigation" under § 9 (b) anticipatory to a Commission complaint thereunder, citing receipt of "reliable information" of discrimination, which recitation presumably referred to the § 9 (a) individual complaints.

The Court of Appeals, in noting that § 9 (b) requires a preliminary investigation before it may issue a Commission complaint, held that the Commission possessed statutory

authority to issue a subpoena duces tecum "in connection with [such] a preliminary investigation under Art. 49B, § 12 (b) [now 9 (b)]." *Id.* at 512-513. It then addressed the question whether the Commission was empowered to issue the subpoenas for a preliminary investigation pursuant to a § 9 (b) Commission complaint where the four individual § 9 (a) complaints comprising the "reliable information" required by § 9 (b), lacked the particulars required by § 9 (a). It held that so formal a complaint, capable of meeting the individual complaint particulars test, was not a prerequisite to the commencement of a § 9 (b) administrative complaint preliminary investigation. *Id.* at 514.

But that is not the posture of the case before us. Here the Commission is simply conducting a preliminary staff investigation as required in § 10 (a) upon an individual § 9 (a) complaint. The chairman or vice-chairman of the Commission has not authorized a preliminary investigation under § 9 (b) and consequently there is present neither the § 9 (a) nor the § 9 (b) safeguards from harassment, *i.e.,* the prerequisite for some particularization of at least a single act of (hiring or promotional) discrimination as required by § 9 (a) or the alternate safeguard, *i.e.,* invoking the Commission chairman's or vice-chairman's discretion by calling upon him to certify that the Commission has received what it determined to be "reliable information" sufficient upon which the chairperson has authorized a preliminary investigation under § 9 (b). The faith reposed by the Legislature in a chairman's judgment of what information is sufficiently reliable to warrant a preliminary investigation anticipating a Commission complaint was not reposed in "[a]ny person" whose complaint under § 9 (a) will also trigger a preliminary staff investigation under § 10 (a). To separate valid individual complaints from those of overzealous malcontents, the Legislature required individuals to set forth the act of discrimination against them *and* "the particulars thereof".

It is also apparent that the discussion in *Banach* dealing with the term "particulars" addressed its restrictions upon that term as if it were a legalism defining the juridical

sophistication of detailing a claim, see, *e.g., Black's Law Dictionary* 1275 (4th ed. rev.), as opposed to discussing the prerequisite statutory necessity of an individual complaint setting forth *a particular* or specific act of discrimination. *Banach* reasoned that complaints are often filed by "individuals unschooled in the legalistic complexities of the pleading process", *id.* at 514, but nowhere indicated that a complainant need not have been "aggrieved" by some particular act of discrimination prerequisite to invoking the Commission's investigatory powers on his behalf under § 10. It should also be noted that we do not address the question of "reliability" of information which would under § 9 (b) justify the Commission to authorize a preliminary investigation, no § 9 (b) investigation having been authorized here as it had been in *Banach. Id.* at 505. It is enough to note that such reliability was not attested by a chairperson's investigatory authorization.

The investigation here was that required of the Commission staff under § 10, when referred to it by the executive director. Significantly, the scope of investigation is limited to determining whether

> "there is probable cause for believing a discriminatory act has been or is being committed . . . ." § 10 (b) (emphasis added);

it is not the broader § 9 (b) investigation to determine whether "any person has been engaged or is engaged in any discriminatory practice within the scope of this article." That broader, more general responsibility to ferret out discriminatory practices is confined to the chairman or vice-chairman whose judgment is subject to the Commission in which administrative faith has been reposed. It may not be invoked by an individual complainant whose recourse requires recitation of a specific act. Certainly an intuitive feeling or a vague belief that discrimination may exist is not enough under § 9 (a) and would hardly be "reliable information" even if communicated to the Commission pursuant to § 9 (b).

On the complaint form, in bold print at the top, the

Commission itself recognized the § 9 (a) distinction. Its instructions to individuals presuppose that a § 9 (a) complaint must allege an act of discrimination by instructing the complainant that,

> "*The Act* of Discrimination must be based on Race, Color, Religion, Sex, Marital Status, National Origin, Age, Physical Hardship, Mental Handicap". (Emphasis added.)

One of the considerations of statutory interpretation of legislative intent is how an agency has interpreted its own statutory procedures. *Public Serv. Comm'n v. Howard Res.,* 271 Md. 141, 152 (1974). We agree with that implicit interpretation by the Commission.

We feel compelled to note that even if the subpoena in this case were relevant to a statutorily authorized inquiry into an alleged discriminatory hiring practice somehow affecting Mr. Whye, it could hardly have been subject to inquiry under § 10 since he had been employed for 9 years. While it is hard to see how he could be discriminated against by having been hired, even so assuming, a complaint must be filed within six months of the act of discrimination.

Beyond that, had the aborted inquiry also related to an act of promotional discrimination, the Commission's testimony at the hearing admitted that although Mr. Whye's personnel file "probably" would have been determinative of the promotional issue, it was never sought by request or subpoena. The investigator explained that she

> "was hoping that his application would be included in the applications that I requested throughout the period of time."

In other words, instead of asking for one likely determinative file, the Commission subpoenaed documents that would have brought the personnel division of the Department to a standstill for three weeks.

It appears that appellant has interpreted the "social burden of living under government" language we quoted in *Equitable, supra,* as permitting it to be indifferent to the

inconvenience, cost or difficulties of complying with the requisition clause of its subpoena. If not indifferent, then the statute is being interpreted to expand the role of the staff if not the Commission and in light of the onerous burdens so lightly imposed by the awesome power of subpoena, either borders upon an abuse of that process. The trial judge observed:

"I personally think this, and I feel very strongly about this, Mr. Young [of counsel for appellant], because I don't think anybody ought to be discriminated against. It's a wonderful country and should be for all of us. But at the same time, sir, I think when you take the law, and here you are taking the law and making a sword out of it, not for the purposes of determining this gentleman's rights and what discriminations are against him, but rather against a complete county, I think that is oppressive and if you have the right to do this, you can bring this entire sub-division to its knees and bring it to a stand still, both financially and through work records, to get all of this information which has nothing to do with Mr. Whye at all."

We were admonished to adhere to the findings of the trial judge by the Court of Appeals when it reversed us in *Equitable, supra.*

"Trial judges generally are vested with a wide range of discretion. This is no less so in their determination of the relevance or oppressiveness of agency subpoenas. Because they are on the scene and intimately acquainted with the details at the time, they are in a better position than are appellate judges to evaluate such an issue as oppressiveness or burdensomeness . . . ." *Equitable Trust,* 287 Md. at 97.

We adhere to that admonition with alacrity.

*Judgment affirmed.*
*Costs to be paid by appellant.*

APPENDIX:

List of Agencies with subpoena power.

| | |
|---|---|
| Transp. Art., § 5-209 | State Aviation Commission |
| Art. 2B, § 193 | Power to summons for Comptroller, board of license commissioners for any county or Baltimore City, or State Appeal Board |
| Cts. & Jud. Proc. Art., § 3-217 | Arbitrators |
| Art. 11, § 8 | Bank Commissioner and Deputy |
| Art. 23, § 161F | Department of Buildings, Savings & Loan Associations, any board created |
| Art. IV, § 4B of Md. Const. | Judicial Disabilities Commission |
| Art. 25, § 105 | Clerk of Board of County Commissioners summon defendant landowners who have not signed petition |
| Art. 27, § 106 | State's Attorneys; support for destitute parents |
| Corps. & Assoc's. Art., § 11-701 | Securities Commissioner |
| Art. 33, § 3-10 | Local Election Boards |
| Art. 38A, § 5 | State Fire Prevention Commission |
| Art. 38A, § 8 (h) | State Fire Marshal |
| Art. 40, § 30 | Legislative Policy Committee |
| Art. 40, § 40A | Committee on Legislative Review |
| Art. 40, § 61C | Legislative Auditor |
| Art. 40, § 79 | Legislative Investigative Committees |
| Art. 41, § 188A | Sundry Claims Board |
| Art. 41, § 205E | Board of Appeal of State Department of Employment and Social Services (only for appeals filed on or before July, 1978) |

| | |
|---|---|
| Art. 41, § 206B | Board of Review of Department of Health and Mental Hygiene |
| Transp. Art., § 2-506 | Board of Review of Department of Transportation |
| Nat. Res. Art., § 1-107 | Board of Review of Department of Natural Resources |
| Art. 41, § 257G | Board of Review of Department of Economic and Community Development (only for appeals filed on or before July, 1978) |
| Transp. Art., § 10-203 | Washington Metropolitan Area Transit Commission |
| Art. 43, § 3 | Secretary of Health and Mental Hygiene |
| Agric. Art., § 2-304 | State Board of Veterinary Medical Examiners |
| Agric. Art., · § 4-222 | State Board of Agriculture |
| Art. 43, § 518 (g) (2) | Maryland Architectual Registration Board |
| Art. 43, § 545 (a) | State Board of Cosmetologists |
| Art. 43, § 636 (d) | State Board of Examiners of Psychologists |
| Art. 43, § 698 (d) | Department of Health and Mental Hygiene; Air Quality Control |
| Art. 43, § 568M | Health Services Cost Review Commission |
| Art. 43B, § 5 (o) | Maryland Drug Abuse Administration |
| Art. 44A, § 8 (g) | Local Housing Authorities |
| Art. 48A, § 27 (l) | Insurance Commissioner |
| Agric. Art.,§ 7-206 | State Tobacco Authority |
| Art. 49B, § 11 (d) | Human Relations Commission |
| Art. 26, § 148 (a) | District Court Judges, power to summons |
| Real Prop. Art., § 8-401; § 8-402 | Landlord-Tenant; District Court to issue summons |
| Real Prop. Art., § 13-103 | Archivist (Hall of Records) power to summons including summons duces tecum |

| | |
|---|---|
| Art. 56, § 194 | County Commissioners: to issue summons via sheriff to enforce dog licenses requirements |
| Art. 56, § 225 | Real Estate Commission and Real Estate Board have power to subpoena persons |
| Art. 56, § 260 | Maryland Home Improvement Commission; Power to subpoena persons and documents |
| Cts. & Jud. Proc. Art., § 9-201 | Judges |
| Art. 59, § 27A | Department of Mental Hygiene; empowered to issue compulsory process for attendance of witnesses and production of papers |
| Transp., Art., § 7-210 | Maryland Transportation Authority; power to subpoena witnesses, papers, records and documents |
| Art. 66, § 54 | Bank Commissioner of Maryland; power to subpoena witnesses, documents, papers, books and other evidence |
| Transp. Art., § 12-108 | Motor Vehicle Administration — summon witnesses, books, papers or records |
| Nat. Res. Art., § 6-109 | Maryland Geological Survey of the Department of Natural Resources — power to summon witnesses, records, books and documents |
| Art. 78, §§ 63 & 80 | Public Service Commission; subpoena duces tecum |
| Art. 78B, § 11 | Maryland Racing Commission |
| Art. 81, § 41 (See § 106) | (a) State Department of Assessments & Taxation and all local supervisors of assessments<br>(b) Sections 229, 231 — Maryland Tax Court |

<table>
<tr><td></td><td>(c) Section 304 — State Comptroller</td></tr>
<tr><td></td><td>(d) Section 179 — An arbitration board in certain cases called by the Comptroller</td></tr>
<tr><td>Art. 75½, § 8</td><td>County surveyors (See Cts. & Jud. Proc. Art., § 9-202)</td></tr>
<tr><td>Art. 95A, § 12</td><td>Executive Director or Board of Appeals of Department of Employment Security</td></tr>
<tr><td>Art. 101, § 8</td><td>Workmen's Compensation Commission</td></tr>
</table>